Good morning, Your Honors. May it please the Court. My name is Dean Paik, and I represent the Defendant Appellant in this case, Mr. Lewis. I would reserve five minutes for rebuttal if that's okay. At the crux of this appeal are two issues that I'd like to address first. The first is the issue of whether the district court is required to make a finding of reasonableness under 3161H, H-7, now H-6, in order to exclude time where there are co-defendants or whether it's appropriate to just make a finding under H-8, H-7 now, as to complexity and that that would be enough. The second issue that I wanted to address was whether, in fact, the delay in this case was reasonable. On the first issue, whether or not a finding of reasonableness is required where there are co-defendants, the government would, has argued, and I think the court has the district court has pointed out, that it might work as severance in many, many cases. Now, I believe that we believe that that's, that concern is overblown, that really the situations in which there would be a severance would be where the government has acted unreasonably in delaying the case. The first, and what I would point out is that where there's a superseding indictment and the, there are later joint defendants, but that the charges against the original defendant increase, the Speedy Trial Act clock is reset. Thus, where the government indicts the main defendant and continues to investigate that defendant and increases the charges, there is no Speedy Trial issue. That would mean that there's really a separate, there's really a risk of a separate trial just in those instances where the original defendant's charges remain the same. And those situations are not the same. Sotomayor, it sounds to me as if what you're saying is that the concept of complexity cannot be applied to the case as a whole, but only from the perspective of an individual defendant. And I'm wondering whether that is a requirement. It's certainly one way that a court could, a district court could analyze it, but is it the only way that the court is allowed to analyze it? Well, no. As the Court points out, there are different ways the Court could analyze it. In this case, if you reset any meaning whatsoever, you the – I think you would have to place limits on the complexity finding, because if you allowed a complexity finding to kind of completely take over the case, you would have a situation where you could add defendants, seriatim, and restart the clock each time based on a complexity finding with respect to that individual defendant. Because there are – When you say that, who are you referring to? Excuse me? When you say with respect to that individual defendant. The defendant that you're adding. Because in each instance, when you add a later defendant, that's – Well, no, no. But you can maybe, as to that defendant, the Court can find as complex, but doesn't necessarily mean as complex as, say, with respect to someone who was indicted six months ago. I agree. I think that's – I think – but Judge Graber's point was that if you make a complexity finding, one issue here is that the Court could view it as a complexity finding as to the case as a whole. If you do that in that instance, then each time you add a defendant, the clock is going to restart. That defendant that – and I mean the later added defendant – is going to need additional time to prepare for the trial. It's just by – it's just going to happen in every single instance. You can – in that way, I – you could subvert the point of the speedy trial clock by just adding these defendants seriatim, because the clock will restart each time. Now, the first defendant, in this case it would be Mr. Lewis, would – would have his case continued ad infinitum. I mean, it just – there's no real limit to it. Because, as the government points out, H-7 has no – excuse me, H-8 has no limitation. It's just any delay that is based on the complexity is a limitation. I wanted to ask you about that, too. If a delay is caused by the complexity of a case, let's – for the sake of my question, assume that all defendants are indicted at the same time, and complexity, whatever it is, applies to everybody equally. If a case is complex and the delay is occasioned by the difficulty of preparing for that particular case, isn't that, by definition, reasonable? If the – if the delay is proportional to the level of complexity and difficulty of preparation, doesn't it – isn't it, by definition, reasonable? Wouldn't that be a redundant requirement? Yes, I think it would be. So there doesn't have to be a separate reasonableness inquiry if the complexity finding is justified? No. Because with – in order to give meaning to H-7, you have to have a reasonableness requirement when you add defendants who have a different speedy trial clock. Okay. So you're – you're limiting your argument to the situation of adding the defendant, not to the complexity in general. Right. Because if you look at the structure of the Act, H-8 really deals with complexity. It's a – it's a broad – it's a broad concept that consumes a lot of things. H-7 deals with defendants, co-defendants. It deals with the more specific situation that we actually have here. And the – But we have both, and that's what makes it hard. We have multiple defendants added at different times, and we have a complicated case because of the nature of the conspiracy and the sort of gathering evidence from all over the world and all the things that are true about this case that make it harder than the – than the average bank robbery. Right. And if you look at it the other way and say, well, if there's an H-8 finding as to complexity, it could kind of go on forever, but you're adding defendants, so you need to consider the original defendant's – the original defendant's needs to get to trial quickly. The case was complicated from the beginning, though, wasn't it, because there was always contemplated that there would be evidence concerning this underlying conspiracy. It was. But there are different levels of complexity. I think that one of the problems you have here is that the Court made no – made no findings with respect to the Arizona defendants who were added later on. The case was more complex with respect to Lewis and Wong because they were on every one of the tapes. They were central to the conspiracy going on, whereas Pollution Miller, the Arizona defendants, were much later added into the case, and their role was very limited. So a complexity finding as to Wong or Lewis may have – and I'm just kind of postulating at this point – may have been justifiable for six months, a year, whereas a complexity finding for Pollution Miller would not – would not be – would not be justified for that length of time. And I think the Ninth Circuit jurisprudence points that out, that the Court is required to make a specific contemporaneous finding based on the facts as they then exist. And I think that was one of the – I think that's a major issue for the – the complexity finding that was made with respect to – or I guess the complexity finding that was made with respect to Pollution Miller in September of 99. The government pointed out in the – in their 28J letter that they pointed the Court to a case that dealt with H-8, and, again, it doesn't say anything about the interaction with the new H-7. And it was the Gallardo case, and they pointed out that you can't infer the term reasonableness in – or imply the term reasonableness in an H – in a complexity section. And I think that's a major issue for the Court in that it doesn't answer the question of the interaction between H-7 and H-8, that H-8 is a much broader concept and that H-7 really covers this situation here where you're adding defendants. And I would also point out to the case the Court that this Court's prior jurisprudence in Hall, Nessar, and Butts has reiterated the fact – reiterated the rule that where you have a situation where you have other defendants, a complexity finding isn't in and of itself enough. You have to go on and then find with respect to the other defendant that you're excluding time that it's reasonable to do so, so that I – Now, what about the reasonableness argument? Well, on – on – there are two separate periods at issue. There's the first period at issue dealing with Burroughs, who was the cooperating defendant, and Wong, who was the – the target of the investigation who had been imprisoned in Mexico. Burroughs – and so for this first period, dealing with the first period, Burroughs had indicated that he was going to plead guilty. So under Hall, it's not reasonable to exclude time with respect to him. The only other person at issue in this early period is Wong. Wong had been indicted with Lewis in July of 98, had been arrested in September of 98, and had been pending extradition for – since September of 98. By May of 99, which is when Lewis – Lewis's – I don't know if it was a second or third request for a trial at that point, but the Court continued his June trial date, and – and Wong had been pending extradition for seven months. The government by that time had been repeatedly informing the Court that – that Wong would appear shortly. Well, I think we're aware of the facts. The question is, there doesn't seem to be any bad faith in the slowness of the extradition. It's just slow. And what – what do we do with that if – if there is someone who is necessary to the prosecution, either as a target or as the crucial witness, and there's a – an ongoing effort to extradite that person that is not rapidly successful, what – what is done with that time period? I guess I would quibble on the bad faith language at first, because I think there was no bad faith in terms of – or I don't know. There's nothing in the record to suggest that the government was acting in bad faith to slow the extradition. The problem is the representations that the government was making to the district court. Well, why does – I guess I'm asking you in a sense, why does that make any difference? If they thought that it was going to happen next week, but it takes a year and a half, but it isn't really their fault because the person's in another country and isn't being returned, what happens to that period of time? And does it matter that they have represented that they thought it was going to happen quicker than it did? Well, it – it's – it could – you're right. The first issue is whether it's unreasonable to continue the case because of that. I – we would submit that it is. The second, though, issue that – where it pops its head is that if it is unreasonable, did the government act in good faith or bad faith? Our argument is that had the government accurately represented the speed with which it would take to extradite someone from Mexico, the district court never would have continued the trial date, either whether it's in March. What would the court do in that situation, dismiss the indictment without prejudice so that when the person is extradited, they could start over, which is essentially what happened here anyway, isn't it? Well, I don't know. I mean, if the court had found that the bad faith was significant, that the representations were – The representation was not accurate, but that is not the equivalent of bad faith. Right. And I think the court at that point would be required to engage in a hearing or some kind of investigation as to what the government knew at that point in time when it was making its representations. Were the – and I'm not – and I'm not saying that the government would have willfully misrepresented the speed of extradition, but could the government have been negligent? Could the government have been grossly negligent? Would those factors have weighed heavily towards dismissing the case with prejudice? Let me quickly ask you, because you're almost out of time. You wanted to divide it into two periods, and you've talked about the first one. What is your – a quick summary of your argument about the second period of time? The second period of time is the period with respect to the Arizona defendants. With those defendants and the continuances that were granted as a result of that, Mr. Lewis suffered prejudice, and that prejudice under – I'm forgetting which case. I think it's Messer – can be enough in and of itself to require the dismissal. Well, the prejudice here was that the government found another witness. It's not the – and I wonder if that is even considered prejudice. If there was a pro-defense witness who got lost or couldn't remember something, that's clearly prejudice. But if the government strengthens its case by finding new evidence, is that the kind of prejudice that is anticipated? Yes, it is. In Hall, that was actually the prejudice that was at issue. In Hall, the government continued the case and was able to secure the cooperation of Nelson, who was the cooperating witness. You were the co-defendant? Yes. And I'm trying to find the exact language. That's okay. I think I understand what your argument is in the citation for it, so. Okay. Well, since I have no time, I will give you some, because we asked you a lot of questions. So when you come back, you can have two minutes for rebuttal. Thank you. We'll hear from the government. Thank you. May it please the Court. My name is Alan Brabender, and I represent the United States. The district court correctly calculated there to be at most 145 days of pretrial delay in this case. Could you pull the microphone towards you? Sure. Meaning that the trial court should have brought Lewis to trial 75 days earlier than the actual start date of his trial. Lewis's contention that the trial should have began even earlier is unsupportable, because the additional pretrial delay and dispute from May 6th to December 13th, 1999, was excluded from the Speedy Trial Act calculation under H-8 because of the case's complexity, and also under H-7 because of the delay. When you say excluded because of complexity, complexity is to whom? Oh, well, when a court makes an H-8 determination, it is the case that is determined to be complex, not the situation facing any particular defendant. No, but suppose just before that, you know, everybody agreed we're all ready to go to trial, and you had a new defendant, the court says, no, it's complex. Well, in that particular situation, the Speedy Trial Act, the Speedy Trial Clock would probably be reset because there would be a new indictment, and everybody's case would be matched up with the newly added defendant pursuant to H-7. But a complexity determination is much different, and it doesn't apply to a particular defendant. It applies to the case. And I would refer this Court to the language of H. Maybe it applies to the case, but it results from the addition of another defendant. Doesn't it? No, I don't think – I guess it depends on the case. But just because you add another defendant, that doesn't make a case complex, necessarily. Right. And my point is that the argument is not that the – But if that's the occasion on which the court, you know, makes a complexity finding, then you can, you know, the reasonable inference is, you know, the reason for the complexity is because there's a new defendant joined. And then, doesn't that call into question then whether or not, you know, because it's the joinder that makes it complex as to the old defendant, there's some reasonableness requirement applies. Well, in that situation, H-7 would apply and would reset the clock for all defendants. And so the Court wouldn't have to make a complexity determination under H-8 in order to exclude time under the Act. But my point is that the H-8 exclusion applies to the case. And where that comes from – Is there anything specifically complex about this case that is apart from several defendants, the fact that there are several defendants? Well, the district court referred to a number of things. First, it was the large volume of discovery, not only the thousands of pages of documents, but also over 300 tape-recorded conversations, which take a long time to listen to and to digest. The fact that there were multiple cases and investigations from multiple districts, from Texas, Arizona, and the Northern District of California. The fact that the nature of the crime was complex and is not the everyday sort of crime, as well as the international aspects of the case. There were international defendants, international treaties involved, and also potentially international witnesses. All of these things made the case complex, and it had nothing to do with enabling a joint trial. And that is the purpose of H-7, is to enable a joint trial. Here, both of the exceptions applied, and – and there's just separate exclusions capturing different circumstances. But even if this Court were to accept Lewis's argument and hold that the H-7 reasonableness inquiry subsumes H-8, I think the totality of the circumstances here dictate a finding that the pretrial delay was reasonable. What the district court was trying to do was enable a joint trial, consistent with what the Supreme Court has told district courts to do. The Supreme Court has said that there's a strong presumption in favor of joint trials in the federal system. People who are indicted together are supposed to be tried together. So – Is there any – well, let me just ask more – more straightforwardly what your response is to opposing counsel's argument about the difficulties in extraditing one of the federal conspirators here. Does it make any difference whether there was bad faith or good faith on the part of the government, and does it make any difference that it took a really, really long time to get this guy extradited? I don't believe it does make a difference. And I believe it's the first 10 or 15 pages of the excerpt of the record, and it has our motion to continue trial. And it states our reasons for believing that Wong would be available soon, and that is that he had already been denied his extradition. He had fought the extradition, and that extradition had been denied twice by the Mexican authorities, and only his appellate proceeding remained. And appellate proceedings in Mexico are relatively quick, I guess. Generally, defendants enjoy far fewer rights than they do in the United States at the appellate stage. And so that was the basis for our belief that Wong would be arriving in the Northern District soon. And the district court accepted that and gave us a 90-day continuance and said, I'm only giving you 90 days. After that point, that's it. And so, you know, I think the record shows that the government had a good faith in believing that Wong would be arriving in the Northern District soon. So the law didn't arrive, so then what is the legal result of that? What's the legal analysis that follows from that? Well, I think what you have to look at is whether the district court's actions were reasonable. And what the district court, again, was trying to do was enable a joint trial, consistent with what the Supreme Court has told district courts to do. And so How far can you carry that? I suppose it takes 20 years to get Roman Polanski or, you know, somebody in that situation, it takes years to get somebody extradited. Could Mr. Lewis face this trial 20 years from now, if that's how long it took to get Wong extradited? Well, two points. First of all, Wong only can – Wong was only the basis for the 8-7 continuance for only a couple more months after that point, because after August 11th, when the speedy trial clock reset and the new indictment was filed, adding Palooch and Miller, the focus of the 8-7 exclusion became Miller and Palooch and not Wong, which happened only a couple months after the hearing in which the Court delayed to allow Wong to be extradited. And the other point is, the way for a defendant to get out of it would be to move for severance. The presumption was because Lewis and – and Wong were indicted together, they were supposed to be tried together. And if a defendant believes that is unduly prejudicial to them, it is the defendant's responsibility to move for severance, which, of course, Lewis didn't do during the relevant period. And so – Would you – would you comment also on whether you agree or disagree with counsel's observation that the finding of a new government witness constitutes prejudice as distinct from losing a defense witness or the memory of a defense witness? Well, right. First of all, this is an argument that was raised for the first time on appeal.  And Lewis does fault the district court for not considering it, but the reason the district court didn't consider it was because Lewis never asked the district court to. And Lewis does rely on some dicta in Hall, but the dicta in Hall is just that. And I don't think this Court should follow it, because the addition of a witness is not the kind of thing that causes undue prejudice. It's – the case is almost uniformly referred to losing witnesses. The addition of a co-conspirator – Why do you call that dicta? You know, in our circuit, we have a very broad definition of what a holding is and a very narrow definition of what dictum is. Why do you call this a dicta? I think it's a dicta because it wasn't necessary to the case. Well, it doesn't have to be in our circuit. It's an awful – I'll accept that as being true, Your Honor. It's an awful analysis of the situation, isn't it? I don't know. It could be that the – you know, the problem with dicta is it's sometimes not fully briefed. And the issue might not have been fully briefed to the Court. And now we have briefed the issue, and we've cited Supreme Court cases that have said that the addition of witnesses is something that is essential to society's interest in justice. And something that is essential to society's interest in justice, on the one hand, cannot, on the other hand, be said to cause a defendant undue prejudice. But regardless, Your Honor, prejudice is just one factor to consider in the totality of circumstances. What case is that? What case are you talking about? Richardson v. Marsh, Your Honor. But prejudice is just one factor to consider in the totality of circumstances where Lewis – where the purpose of the delay was to enable a joint trial, where Lewis didn't move for severance, where he was free on bail, where the non-excludable delay was minimal, and where there was no actual prejudice. The totality of the circumstances dictate a finding that the pretrial delay was reasonable. But ultimately, the ultimate question here is whether the district court abused its discretion in dismissing the original indictment without prejudice, which allowed Lewis to be reindicted and reconvicted. And nothing Lewis argues shows that the district court abused its discretion. The district court carefully considered the statutory factors and concluded that despite the length of the delay and any prejudice that Lewis may have suffered as a result of losing his original trial counsel, those factors paled in comparison to the strength of the factors favoring reprosecution. And those factors favoring reprosecution include Lewis's serious conduct here as a leader and a recruiter in an international wildlife smuggling conspiracy. The factors favoring reprosecution also include the government's good faith. The circumstances which led to the violation were the government and the court's reliance on then-existing Ninth Circuit precedent and also the court's and the government's concern for judicial efficiency in enabling a joint trial. The district court also believed that Lewis was in part responsible for the delay by not timely moving for severance. And the district court also noted Judge Hamilton, who reviewed this case in considerable detail independent of Judge Jenkins, noted that it was questionable, it is questionable, whether or not a Speedy Trial Act violation even actually occurred in this case. And that is because the 117-day ---- How can we revisit that? Isn't that the law of the case, that there was a violation and I don't see what the Well, we have a number of exceptions, criteria for ignoring the law of the case doctrine, but does any of those apply here? Well, it is the law of the case, and we're not asking this Court to revisit Lewis Wong's holding. But we do believe that the questionable nature of the holding is something to consider when deciding whether to dismiss with or without prejudice. And that is how we are raising the argument, Your Honor. At bottom, the district court here weighed all the correct statutory factors and determined in its discretion that dismissal without prejudice is appropriate, and nothing Lewis argues shows otherwise. And unless this Court has any further questions. I don't believe that we do. Thank you, Mr. Brabender. Mr. Peck, we'll give you two more minutes. Your Honor, first let me address Hall and this question of whether or not there can be prejudice. It seems to me, before you start, that Hall is almost the flip side of this case, because in Hall the issue was can you make a joint trial go away, and here the purpose was to ensure a joint trial, sort of the opposite purpose. So as you talk about Hall, maybe you could tell me why those are not distinguishable situations. Well, they are distinguishable situations, but the reasoning and the rule from Hall – I cited Hall for the proposition that you can suffer prejudice from the addition of witnesses, and that is clear from Hall. I don't think it's dictum. I think it's a dicta. I think it's – it is part of the holding of the case in Hall, because you've eliminated a defendant in order to get – secure that defendant's cooperation against the other defendant and that the defendant who does not suffer prejudice. But the point of it was under H-6, I believe it was. I'm not looking at it at the moment, but it was a different section of the statute, I think. No, it wasn't. It was under H-7. It just seems to me different to say you're removing the opportunity for a joint trial versus you are ensuring the opportunity for a joint trial, that those would yield different results. Well, I don't – but I – Regardless of whether you're adding or subtracting, you know, witnesses. Right. And I don't think Hall is limited to its facts. I think Hall talks about the analysis under H-7 and points out that when you have a situation where it really doesn't make any sense what you're trying to do and accomplish, it's not reasonable. It's not reasonable under H-7. Here, it didn't make any sense what the government was trying to do. And I'm talking about the first period. Burroughs had indicated he was pleading guilty. That, on its fours, is the Hall situation. So he doesn't count. Wong, who was in Mexico, as I kind of went on, it wasn't reasonable to have any kind of expectation that he would appear within a reasonable period of time where he could be tried with Lewis. And it was only because I – we submit because of the representations that the government was making to the district court that the district court even believed it was a possibility. The only other thing that I wanted to point out was that this period from May to August that we've been talking about of 99, where we were talking about Wong and Burroughs, the district court, Judge Hamilton, made no findings as to reasonableness. She relied entirely on the fact that there was an H-8 complexity finding. So all the things we've been talking about with respect to Wong and whether Lewis suffered prejudice with the – these are issues she never reached. So there's nothing to review on that point. There's this issue about whether she gets a – any kind of deference on review. It's irrelevant. Well, then, what shall we do, then, if we find that there's – send it back again? Well, I mean, on the other hand, I think you – well, I don't know. I mean, I think that's – it's a factual finding. There are no – there are no findings as to reasonableness. What I would say is the record in this case has been developed ad nauseam. Well, you can't have it both ways. Either the record is sufficient for us to review or there's an absence of findings that makes it impossible to review. Well, Judge Hamilton did not make any findings. There is – there are no findings from the district court to review. Absent those findings, though – She did find that it was complex. That is a factual finding. Right. But she failed to make any finding as to reasonableness. And if we find – if we were to hold that reasonableness does not have to be found separately from complexity, then there is enough here to review. Yes. But if you don't find that, what I would say is that the record otherwise has been developed, and you could – I don't think – I think it's – the record is actually clear that it wasn't reasonable and that you could find that based on the appeals that – and her own opinion. When you say you could find that, you mean the appellate court? Yes. In the first instance. I know that – I mean, this case has gone on for a long period of time. I'm not – I understand the Court's quandary, but I'm not sure if I really have a solution because I don't think there's anything there. Thank you, counsel. We appreciate very much the arguments of both parties. The case just argued is submitted. Thank you.
judges: Tashima, Graber, Bybee